Michael Faillace [MF-8436]
MICHAEL FAILLACE & ASSOCIATES P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
YUDELSI ROQUE PAREDES, ADRIANO
FRANCISCO, AND MAXIMO ESPINAL,
*individually and on behalf of others similarly*
*situated,*

                             *Plaintiffs*,

        -against-

LONDON BOY SPORTSWEAR LTD (*d/b/a*
LONDON BOY STATION), ALI KHALIL,
and HASSAN KHALIL,

                         *Defendants.*
-------------------------------------------------------X

**25-cv-02198**

**SECOND AMENDED**

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

       Plaintiffs Yudelsi Roque Paredes, Adriano Francisco, and Maximo Espinal, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates P.C. upon their knowledge and belief, and as against London Boy Sportswear LTD (d/b/a London Boy Station), ("Defendant Corporation"), Ali Khalil and Hassan Khalil, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

<u>**NATURE OF ACTION**</u>

       1.      Plaintiffs are present and former employees of Defendants London Boy Sportswear Ltd (d/b/a London Boy Station), Ali Khalil, and Hassan Khalil.

2.    Defendants own, operate, or control a clothing store, located at 2908 3rd Ave Bronx, NY 10455, operating under the name "London Boy Station" .

3.    Upon information and belief, individual Defendants Ali Khalil and Hassan Khalil, serve or served as owners, managers, principals, or agents of Defendant Corporation and through this corporate entity, operate the retail store as a joint or unified enterprise.

4.    Plaintiffs have been employed as general assistants and salespersons at the retail store located at 2908 3rd Ave Bronx, NY 10455 .

5.    At all times relevant to this Complaint, Plaintiffs have worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they have worked.

6.    Rather, Defendants have failed to maintain accurate recordkeeping of the hours worked and have failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.    Defendants' conduct extends beyond Plaintiffs to all other similarly situated employees.

8.    At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

9.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.*

and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

10.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

12.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims have occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a clothing store located in this district. Further, Plaintiffs have been employed by Defendants in this district.

## PARTIES

*Plaintiffs*

13.     Plaintiff Yudelsi Roque Paredes ("Plaintiff Roque Paredes" or "Ms. Roque Paredes") is an adult individual residing in Bronx County, New York.  Plaintiff Roque Paredes was employed by Defendants at London Boy Station from approximately 2006 until on or about March 14, 2020 and from approximately December 3, 2021 until on or about July 20, 2024.

14.     Plaintiff Adriano Francisco ("Plaintiff Francisco" or "Mr. Francisco") is an adult individual residing in Bronx County, New York.  Plaintiff Francisco was employed by Defendants at London Boy Station from approximately December 3, 2021 until on or about July 20, 2024.

15.    Plaintiff Maximo Espinal ("Plaintiff Espinal" or "Mr. Espinal") is an adult individual residing in Bronx County, New York. Plaintiff Espinal was employed by Defendants at London Boy Station from approximately June 20, 2022 until on or about July 15, 2023.

16.    Plaintiffs consent to being party Plaintiffs pursuant to 29 U.S.C. § 216(b), and bring these claims based upon the allegations herein as representative parties of a prospective class of similarly situated individuals under 29 U.S.C. § 216(b).

*Defendants*

17.    At all relevant times, Defendants own, operate, or control a clothing store, located at 2908 3rd Ave Bronx, NY 10455 under the name "London Boy Station".

18.    Upon information and belief, London Boy Sportswear LTD (d/b/a London Boy Station) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 2908 3rd Ave, Bronx, NY 10455.

19.    Defendant Ali Khalil is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ali Khalil is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Ali Khalil possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

20.    Defendant Hassan Khalil is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Hassan Khalil is sued individually in his capacity as a manager of Defendant Corporation. Defendant Hassan Khalil possesses

operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

21.    Defendants operate a clothing store located in the Woodstock section of the Bronx in New York City.

22.    Individual Defendants, Ali Khalil and Hassan Khalil, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

23.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

24.    Each Defendant possesses substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

25.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

26.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

27. Upon information and belief, Individual Defendant Ali Khalil operates Defendant Corporation as either and alter ego of himself and/or has failed to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

a) failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b) defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c) transferring assets and debts freely as between all Defendants,

d) operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e) operating Defendant Corporation for his own benefit and maintaining control over this Corporation as a closed Corporation,

f) intermingling assets and debts of his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

28. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

29.     In each year from 2019 to 2025, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

30.     In addition, upon information and belief, Defendants and/or their enterprise are directly engaged in interstate commerce. As an example, numerous items that are used in the retail store on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

31.     Plaintiffs are former employees of Defendants who have been employed as general assistants and salespersons.

32.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Yudelsi Roque Paredes*

33.     Plaintiff Roque Paredes was employed by Defendants from approximately 2006 until on or about March 14, 2020 and from approximately December 3, 2021 until on or about July 20, 2024.

34.     Defendants employed Plaintiff Roque Paredes as a general worker and salesperson.

35.     Plaintiff Roque Paredes regularly handled goods in interstate commerce, such as retail and other supplies produced outside the State of New York.

36.     Plaintiff Roque Paredes's work duties required neither discretion nor independent judgment.

37.     Throughout her employment with Defendants, Plaintiff Roque Paredes regularly worked in excess of 40 hours per week.

38.     From approximately March 2019 until on or about March 14, 2020 and from approximately November 1, 2021 until on or about January 2, 2024, Plaintiff Roque Paredes worked from approximately 10:00 a.m. until on or about 8:00 p.m., four days a week and from approximately 10:00 a.m. until on or about 8:30 p.m., three days a week (typically 71.5 hours per week).

39.     From approximately January 3, 2024 until on or about July 20, 2024, Plaintiff Roque Paredes worked from approximately 10:00 a.m. until on or about 8:00 p.m., three days a week and from approximately 10:00 a.m. until on or about 8:30 p.m., three days a week (typically 61.5 hours per week).

40.     However, Plaintiff Roque Paredes worked 7 days a week during the months of March and June 2024 (typically 71.5 hours per week).

41.     From approximately March 2019 until on or about March 14, 2020 and from approximately December 2021 until on or about December 2023, Defendants paid Plaintiff Roque Paredes her wages in a combination of check and cash.

42.     From approximately January 2024 until on or about July 20, 2024, Defendants paid Plaintiff Roque Paredes her wages by check.

43.     From approximately March 2019 until on or about March 14, 2020 and from approximately December 2021 until on or about June 2022, Defendants paid Plaintiff Roque Paredes a fixed salary of $1,190 per week.

44.     From approximately June 2022 until on or about December 2023, Defendants paid Plaintiff Roque Paredes a fixed salary of $1,400 per week.

45.     From approximately January 2024 until on or about July 20, 2024, Defendants paid Plaintiff Roque Paredes a fixed salary of $1,120 per week.

46.     Plaintiff Roque Paredes was not required to keep track of her time; instead, Defendants entered false start and stop times into the time tracking system.

47.     Specifically, Defendants would show Plaintiff Roque Paredes working fewer hours Mondays through Saturdays and no hours on Sundays.

48.     In addition, every pay day Defendants required Plaintiff Roque Paredes to sign these false time records, and would not allow her to review them by turning off the lights when they presented her with the documents; Defendants made it clear to Plaintiff Roque Paredes that if she did not sign these false records , she would not get paid.

49.     No proper notification, either in the form of posted notices or other means, was ever given to Plaintiff Roque Paredes regarding overtime and wages under the FLSA and NYLL.

50.     Defendants did not provide Plaintiff Roque Paredes an accurate statement of wages, as required by NYLL 195(3).

51.     In fact, Defendants adjusted Plaintiff Roque Paredes's paystubs so that they reflected inaccurate wages and hours worked.

52.     Specifically, every pay day from approximately March 2019 until on or about March 14, 2020 and from approximately December 3, 2021 until on or about January  2, 2024, Plaintiff Roque Paredes would receive a check for a sum ranging from$250 to $300 and the rest of her pay in cash.

53.     Defendants did not give any notice to Plaintiff Roque Paredes in English and in Spanish (Plaintiff Roque Paredes's primary language), of her rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

54.     As a result of Defendants' failure to provide Plaintiff Roque Paredes with a notice of pay rate or accurate wage statements with each payment of wages, she was prevented from: (i)

comparing her rate of pay to her hours worked; (ii) realizing that she was underpaid; and (iii) advocating for herself and/or taking appropriate action to obtain the payments due to her.

*Plaintiff Adriano Francisco*

55.     Plaintiff Francisco was employed by Defendants from approximately December 3, 2021 until on or about July 20, 2024.

56.     Defendants employed Plaintiff Francisco as a general worker and salesperson.

57.     Plaintiff Francisco regularly handled goods in interstate commerce, such as retail and other supplies produced outside the State of New York.

58.     Plaintiff Francisco's work duties required neither discretion nor independent judgment.

59.     Throughout his employment with Defendants, Plaintiff Francisco regularly worked in excess of 40 hours per week.

60.     From approximately December 3, 2021 until on or about January 2, 2024, Plaintiff Francisco worked from approximately 10:00 a.m. until on or about 8:00 p.m., four days a week and from approximately 10:00 a.m. until on or about 8:30 p.m., three days a week (typically 71.5 hours per week).

61.     From approximately January 3, 2024 until on or about July 20, 2024, Plaintiff Francisco worked from approximately 10:00 a.m. until on or about 8:00 p.m., three days a week and from approximately 10:00 a.m. until on or about 8:30 p.m., three days a week (typically 61.5 hours per week).

62.     However, Plaintiff Francisco worked 7 days a week during the months of March and June 2024 (typically 71.5 hours per week).

63.     From approximately December 3, 2021 until on or about July 2022, Defendants paid Plaintiff Francisco his wages in cash.

64.     From approximately July 2022 until on or about July 2023, Defendants paid Plaintiff Francisco his wages in a combination of check and cash.

65.     From approximately July 2023 until on or about July 20, 2024, Defendants paid Plaintiff Francisco his wages by check.

66.     From approximately December 3, 2021 until on or about January 2023, Defendants paid Plaintiff Francisco a fixed salary of $875 per week.

67.     From approximately February 2023 until on or about July 2023, Defendants paid Plaintiff Francisco a fixed salary of $980 per week.

68.     From approximately July 2023 until on or about January 2024, Defendants paid Plaintiff Francisco a fixed salary of $1,050 per week.

69.     From approximately January 2024 until on or about July 20, 2024, Defendants paid Plaintiff Francisco a fixed salary of $960 per week.

70.     Plaintiff Francisco was not required to keep track of his time; instead, Defendants entered false start and stop time into the time tracking system.

71.     Specifically, Defendants would show Plaintiff Francisco working fewer hours Mondays through Saturdays and no hours on Sundays.

72.     In addition, every pay day Defendants required Plaintiff Francisco to sign these false time records, and would not allow him to review them by turning off the lights when they presented him with the documents; Defendants made it clear to Plaintiff Francisco that if he did not sign these false records, he would not get paid.

73.     No proper notification, either in the form of posted notices or other means, was ever given to Plaintiff Francisco regarding overtime and wages under the FLSA and NYLL.

74.     Defendants did not provide Plaintiff Francisco an accurate statement of wages, as required by NYLL 195(3).

75.     In fact, Defendants adjusted Plaintiff Francisco's paystubs so that they reflected inaccurate wages and hours worked.

76.     Specifically, every pay day from approximately July 2022 until on or about July 2023, Plaintiff Francisco would receive a check for $224 and the rest of his pay in cash.

77.     Defendants did not give any notice to Plaintiff Francisco in English and in Spanish (Plaintiff Francisco's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

78.     As a result of Defendants' failure to provide Plaintiff Francisco with a notice of pay rate or accurate wage statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Plaintiff Maximo Espinal*

79.     Plaintiff Espinal was employed by Defendants from approximately June 20, 2022 until on or about July 15, 2023.

80.     Defendants employed Plaintiff Espinal as a general worker and salesperson.

81.     Plaintiff Espinal regularly handled goods in interstate commerce, such as retail and other supplies produced outside the State of New York.

82.     Plaintiff Espinal's work duties required neither discretion nor independent judgment.

83.     Throughout his employment with Defendants, Plaintiff Espinal  regularly worked in excess of 40 hours per week.

84.     From approximately June 20, 2022 until on or about July 15, 2023, Plaintiff Espinal worked from approximately 10:00 a.m. until on or about 8:00 p.m., six days a week (typically 60 hours per week).

85.     From approximately June 20, 2022 until on or about July 15, 2023, Defendants paid Plaintiff Espinal  his wages in a combination of check and cash.

86.     From approximately June 20, 2022 until on or about July 15, 2023, Defendants paid Plaintiff Espinal  a fixed salary of $660 per week.

87.     Plaintiff Espinal  was not required to keep track of his time;  instead, Defendants entered false start and stop time into the time tracking system.

88.      Specifically, Defendants would show Plaintiff Espinal working fewer hours each day.

89.     In addition, Every pay day Defendants required Plaintiff Espinal  to sign these false time records, and would not allow him to review them by turning off the lights when they presented him with the documents;  Defendants made it clear to Plaintiff Espinal  that if he did not sign these false records , he would not get paid.

90.     No proper notification, either in the form of posted notices or other means, was ever given to Plaintiff Espinal  regarding overtime and wages under the FLSA and NYLL.

91.     Defendants did not provide Plaintiff Espinal  an accurate statement of wages, as required by NYLL 195(3).

92.     In fact, Defendants adjusted Plaintiff Espinal's paystubs so that they reflected inaccurate wages and hours worked.

93.     Specifically, every pay day from approximately June 2022 until on or about July 2023, Plaintiff Espinal would receive a check for $285 and the rest of his pay in cash.

94.     Defendants did not give any notice to Plaintiff Espinal in English and in Spanish (Plaintiff Espinal's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

95.     As a result of Defendants' failure to provide Plaintiff Espinal with a Notice of Pay Rate or accurate Wage Statements with each payment of wages, he was prevented from: (i) comparing his rate of pay to his hours worked; (ii) realizing that he was underpaid; and (iii) advocating for himself and/or taking appropriate action to obtain the payments due to him.

*Defendants' General Employment Practices*

96.     At all times relevant to this Complaint, Defendants have maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

97.     Plaintiffs have been victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they are owed for the hours they have worked.

98.     Defendants' pay practices have resulted in Plaintiffs not receiving payment for all their hours worked, and have resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

99.     Defendants habitually have required Plaintiffs to work additional hours beyond their regular shifts but have not provided them with any additional compensation.

- 14 -

100.    Defendants' time keeping system does not reflect the actual hours that Plaintiffs have worked.

101.    Defendants have willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

102.    On every pay day, Defendants have required Plaintiffs to sign a document the contents of which they are not allowed to review; these documents reflect inaccurate or false hours worked.

103.    Defendants have paid Plaintiffs their wages in a combination of check and cash or all in cash .

104.    Defendants have failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL

105.    Upon information and belief, these practices by Defendants are done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) work, and to avoid paying Plaintiffs properly for their full hours worked.

106.    Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

107.    Defendants' unlawful conduct has been intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

108.    Defendants have failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that

payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

109.    Defendants have failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

110.    As a result of Defendants' failure to provide Plaintiffs and other employees a Notice of Pay Rate or accurate wage statements with each payment of their wages, Plaintiffs and other employees were prevented from: (i) comparing their rate of pay to their hours worked; (ii) realizing that they were underpaid; and (iii) advocating for themselves and/or taking appropriate action to obtain the payments due to them.

## FLSA COLLECTIVE ACTION CLAIMS

111.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or have been

employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

112.    At all relevant times, Plaintiffs and other members of the FLSA Class have been similarly situated in that they have substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA, and willfully failing to keep records under the FLSA.

113.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

114.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

115.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), control the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

116.    At all times relevant to this action, Defendants have been engaged in commerce or in an industry or activity affecting commerce.

117.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

118.    Defendants have failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

119.    Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate has been willful within the meaning of 29 U.S.C. § 255(a).

120.    Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

121.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

122.    Defendants, in violation of 29 U.S.C. § 207(a)(1), have failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

123.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation is willful within the meaning of 29 U.S.C. § 255(a).

124.    Plaintiffs (and the FLSA Class members) have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

125.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

126.    At all times relevant to this action, Defendants have been Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, control the terms and conditions of their employment, and determined the rates and methods of any compensation in exchange for their employment.

127.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, have paid Plaintiffs less than the minimum wage.

128.    Defendants' failure to pay Plaintiffs the minimum wage is willful within the meaning of N.Y. Lab. Law § 663.

129.    Plaintiffs have been damaged in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE OVERTIME PROVISIONS**
**OF THE NEW YORK STATE LABOR LAW**

130.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

131.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, have failed to pay all Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

132.    Defendants' failure to pay all Plaintiffs overtime compensation is willful within the meaning of N.Y. Lab. Law § 663.

133.    Plaintiffs have been damaged in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE NOTICE AND RECORDKEEPING**
**REQUIREMENTS OF THE NEW YORK LABOR LAW**

134.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

135.    Defendants have failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a

- 19 -

mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

136.    As a result of Defendants' failure to furnish an accurate wage notice to Plaintiffs, Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

137.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### SIXTH CAUSE OF ACTION
### VIOLATION OF THE WAGE STATEMENT PROVISIONS
### OF THE NEW YORK LABOR LAW

138.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

139.    With each payment of wages, Defendants have failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

140.    As a result of Defendants' failure to furnish accurate statements to Plaintiffs Defendants violated the NYLL and/or applicable regulations thereunder, including, inter alia, NYLL § 195.

141.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)    Declaring that Defendants' violations of the provisions of the FLSA are willful as to Plaintiffs and the FLSA Class members;

(f)    Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)    Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(k)     Declaring that Defendants' violations of the provisions of the NYLL are willful as to Plaintiffs;

(l)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(m)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(p)      Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal

is then pending, whichever is later, the total amount of judgment shall automatically increase by

fifteen percent, as required by NYLL § 198(4); and

    (r)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiffs demand a trial by jury on all issues triable by a jury.

New York, New York

    Dated: August 19, 2025

                                    MICHAEL FAILLACE & ASSOCIATES P.C.

                          By:    /s/ Michael Faillace
                                    Michael Faillace [MF-8436]
                                    60 East 42nd Street, Suite 4510
                                    New York, New York 10165
                                    Telephone: (212) 317-1200
                                    Facsimile: (212) 317-1620
                                    *Attorneys for Plaintiffs*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

March 3, 2025

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la
demanda como uno de los demandantes.)**

Name / Nombre:                  Yudelsi Roque

Legal Representative / Abogado:  <u>Michael Faillace Esq.</u>

Signature / Firma:              _Yudelsi Roque_

Date / Fecha:                   <u>March 3, 2025</u>

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

March 3, 2025

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Adriano Francisco

Legal Representative / Abogado:    Michael Faillace Esq.

Signature / Firma:

Date / Fecha:                     March 3, 2025

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

March 3, 2025

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Maximo Espinal

Legal Representative / Abogado:    Michael Faillace Esq.

Signature / Firma:

Date / Fecha:              March 3, 2025

*Certified as a minority-owned business in the State of New York*